IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PACIFIC INDEMNITY COMPANY,            *

        Plaintiff            *

v.            *            Civil Action No. JFM 07 CV 826

CLAY H. WHALEY, individually and d/b/a *
C. H. WHALEY & SON, INC.

               *

        Defendant            *

    *     *     *     *     *            *

CLAY H. WHALEY, individually and d/b/a
C. H. WHALEY & SON, INC.            *

        Third-Party Plaintiff  *

v.            *

COMPTON & SONS            *

        Third-Party Defendant*

    *     *     *     *     *     *     *     *     *     *

**MEMORANDUM IN SUPPORT OF
DEFENDANT/THIRD-PARTY PLAINTIFF'S OPPOSITION TO
THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
WITH TABLE OF CONTENTS**

Robert L. Hebb, Federal Bar No.: 23425
Kurt C. Schultheis, Federal Bar No.: 26326
Semmes, Bowen & Semmes
250 West Pratt Street, 16th Floor
Baltimore, Maryland 21201
(410) 539-5040
*Attorneys for Defendant,
Clay Whaley, individually and d/b/a/
C. H. Whaley & Son,  Inc.*

# TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.      Standard of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    II.     Third-party Defendant's Argument that it has No Liability Because it was not Licensed has no Merit and has no Bearing on the Third-Party Complaint for Indemnification and Contribution. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    III.    Whether there is a Contractual Obligation Pursuant to a Novation is Very Much an Issue of Fact. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    IV.    If the Contract Between Clay Whaley and Third-Party Defendant is Ambiguous, its Interpretation is a Matter for the Finder of Fact. . . . . . . . . . . . . . . . . . . . . . 11

    V.     Even if Compton & Sons Was a Good Samaritan, that Defense is not Applicable in this Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    VI.    Clay Whaley is Entitled to Indemnification as Whatever Negligence it had was Passive to that of Active Tortfeasor, the Third-Party Defendant . . . . . . . . . . . . 17

    VII.   Third-Party Defendant's Failure to Properly Secure the Tarp was the Proximate Cause of the Damage to Plaintiff's Insureds' House . . . . . . . . . . . . . . . . . . . . . . 18

    VIII.  The Economic Loss Rule is not Applicable to the Claims Asserted by the Plaintiff (Or the Third-Party Plaintiff) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

    IX.    The Third-Party Defendant's Motion Improperly Cites Facts Which Pertain to Unauthenticated Documents or a Dispute of Fact . . . . . . . . . . . . . . . . . . . . . . . 22

    X.     Summary Judgment Is Improper because the Third-Party Defendant's Expert's Affidavit and Report are not Admissible as they Include Findings of Law . . . . . 28

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PACIFIC INDEMNITY COMPANY,          *

            Plaintiff                *

      v.                             *     Civil Action No. JFM 07 CV 826

CLAY H. WHALEY, individually and d/b/a *
C. H. WHALEY & SON, INC.             *

            Defendant                *

      *     *     *     *     *      *

CLAY H. WHALEY, individually and d/b/a
C. H. WHALEY & SON, INC.             *

            Third-Party Plaintiff   *

v.                                   *

COMPTON & SONS                       *

            Third-Party Defendant*

      *     *     *     *     *      *     *     *     *     *     *

## MEMORANDUM IN SUPPORT OF
## DEFENDANT/THIRD-PARTY PLAINTIFF'S OPPOSITION TO
## THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant/Third Party Plaintiff, Clay H. Whaley, individually and d/b/a C. H. Whaley &

Son, Inc., ("Clay Whaley"), by and through its undersigned counsel, submits this Memorandum

in Support of its Opposition to Third-Party Defendant's Motion for Summary Judgment.

### INTRODUCTION

The above-captioned matter is a subrogation case which arises out of the re-roofing of the

Plaintiff's insureds' house in Easton.  Pacific Indemnity has alleged that the Defendant breached

its contract and/or was negligent with respect to work the work on the roof. Plaintiff has alleged that in May 2004, "substantial amounts of rainwater infiltrated" the Plaintiff's insureds' residence." Complaint at ¶ 12. The alleged property damage in this case is significant. *See* Complaint at ¶ 13 (alleging that damages are in excess of $805,000). There are three causes of action: negligence, breach of contract and breach of warranty. Plaintiff seeks damages from Defendant Clay Whaley due to property damage caused by the water infiltration. The negligence count alleges that Clay Whaley and/or its "subcontractors" caused the property damage by failing to protect the roof prior to the storm. *See* Complaint (negligence count).

Defendant Clay Whaley subcontracted the roofing work to the Third-Party Defendant Compton & Sons (hereinafter "Compton" or "Compton & Sons"). Clay Whaley is seeking indemnity and/or contribution because if there was negligence in installing a tarp to cover the roof, it was Compton's negligence.

Simply stated, the Third-Party Defendant had a contractual agreement with Clay Whaley to work on the Plaintiff's insureds' roof. Now that Whaley has been sued the Third-Party Defendant has taken the position that it was under no contractual obligation to install the tarps and had no duty to act without negligence.

Third-Party Defendant's motion should be denied because there are a number of genuine disputes as to the material facts which preclude summary judgment. A close reading of Compton's Memorandum in Support reveals the existence of *many* questions of fact. Likewise, the Third-Party Defendant is not entitled to judgment as a matter of law for the following reasons:

Any argument pertaining to the fact that the Third-Party Defendant was not licensed has no bearing on a negligence claim (or for that matter, a breach of contract claim against Compton);

The contractual arguments set forth by Compton (novation and ambiguity) pertain to factual matters that are to be determined by the fact finder;

To the extent that Compton was acting in a "Good Samaritan" capacity,[1] that defense is not applicable in this scenario;

Clay Whaley is entitled to indemnification as it was the passive tortfeasor;

The proximate cause of the alleged damage to the Plaintiff's insureds' property concerns an issue of fact; and

The economic loss rule does not apply to this case or the Third-Party Complaint.

Thus, for these reasons, the Third-Party Defendant is not entitled to judgment as a matter of law. Additionally, Compton's Motion for Summary Judgment should be denied because the motion improperly relies upon unsupported facts and/or facts that are in dispute; it also relies upon unauthenticated and/or unsworn documents; and, lastly, the Third-Party Defendant's expert's Affidavit includes conclusions of law and also relies upon unsubstantiated facts.

## FACTS

After meeting with Pacific Indemnity's insureds, the van Agtmaels, in July 2003, Clay Whaley contracted with the van Agtmaels to remove their old roof and replace it. *See* Clay Whaley deposition testimony attached hereto as Exhibit A at p. 42-46. The contract was finalized on or about March 20, 2004. *See* Ex. A at p. 46. Clay Whaley then subcontracted the

---

[1]     Clay Whaley is not conceding that the Third-Party Defendant was a Good Samaritan.

roofing work to the Third-Party Defendant Compton. *See* Ex. A. at p. 52-53. Under the

supervision of Clay Whaley, Third-Party Defendant began working on the roof at the van

Agtmeals in early May of 2004. *See* Ex. A. at p. 58-60, 62. Approximately two or three days

prior to the storm that is the subject of this litigation, Mr. Compton complained that he had

injured his ankle and would not be able to perform the task that he had agreed to do - removing

and replacing the roof. *See* Ex. A. at p. 69; *see also* Deposition of John Compton attached hereto

as Exhibit B at p. 117-18. Clay Whaley then was forced to retain another second subcontractor

to perform the tear out portion of the work and Compton & Sons remained responsible for the

installation of the new shingles. *See* Ex. A (Whaley) at p. 70-76.

Sometime during the early morning hours of May 10, 2004 a storm came through the area

where the van Agtmael property is located in Easton. *See* Third-Party Defendant's Memo in

Support of is Motion for Summary Judgment at p. 11-12 (discussing the storm). Prior to the

storm, on the afternoon of May 9, 2004, Clay Whaley was informed by an employee of the Third-

Party Defendant that it appeared as though there was a chance of showers. *See* Ex. A. at p. 106.

Mr. Whaley resides in Queenstown, Maryland, about 20-25 miles from the van Agtmael property

in Easton. *See* Ex. A at p. 7, 117. Upon being informed of the possibility for rain, Clay Whaley

directed Mr. Jordan of Compton & Sons to purchase an additional large tarp and install it so as to

protect the roof. *See* Ex. A. at p. 106, 108. Mr. Whaley then came to the property and witnessed

Mr. Compton and Compton employee, Chris Jordan installing the tarps. *See* Ex. A (Whaley) at

p. 112-13. Clay Whaley trusted Mr. Jordan, who has testified that he was an experienced roofer

in installing tarps and had installed tarps on roofs on twenty occasions. *See* Deposition of Jordan

attached hereto as Exhibit C at p. 142. Mr. Jordan has been doing roofing work since 1993. *See*

-4-

Ex. C at p. 10.  Unfortunately, at least one of the tarps that Mr. Jordan and Mr. Compton installed

blew off of the roof leaving it exposed.  *See* Ex. A. at p. 224.

There is no evidence that supports an argument that the Third-Party Defendant did not or

could not perform the agreed upon task of installing the tarps in a proper manner.  There is no

evidence of any communications to Mr. Whaley informing him that they could not properly

install the tarp.  Nor is there any evidence that either Mr. Jordan and Mr. Compton complained

about a lack of manpower or their inability to secure the tarp to the roof.

Mr. Jordan was seemingly satisfied with the job that he performed with Mr. Compton.

Q:      After you finished tarping the main building roof, did you call Clay [Whaley] and

tell him you had finished it?

A:      Probably.

. . . .

Q:      What did you do after finishing the tarping?

A:      Went home.

Ex. C at 101.  When asked if he would have put the tarp on the van Agtmael roof any differently,

Mr. Jordan replied that he would not have.  *See* Ex. C at 142.  Nonetheless, the tarp(s) did blow

off and, now, Clay Whaley is the subject of this suit which stems from the negligence of

Compton.

In short and as is more fully discussed below, there are a number of factual disputes

which preclude summary judgment.

## ARGUMENT

### I.   STANDARD OF LAW

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Strauss v. Peninsula Reg'l Med. Ctr.*, 916 F. Supp. 528, 530 (D. Md. 1996) (Davis, J.); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if, when applied to the substantive law, it affects the outcome of the case. *Anderson*, 477 U.S. at 248; *Strauss*, 916 F. Supp. at 530. In deciding whether there is a genuine dispute of material facts, the court must view all evidence presented by the non-movant as presumptively valid and draw all reasonable inferences in its favor. *Anderson*, 477 U.S. at 255. The burden is on the moving party to demonstrate the absence of any dispute of material fact. *Strauss*, 916 F. Supp. at 530. If the non-moving party presents evidence of specific facts from which the finder of fact could reasonably find for the party, summary judgment cannot be granted. *Anderson*, 477 U.S. at 248, 252.

As the Third-Party Defendant is well aware, there are a number of disputes of material facts that preclude summary judgment. Further, many of the factual allegations set forth in the Third-Party Defendant's Motion for Summary Judgment are improperly supported or not supported at all. Because there are facts in dispute (or improperly supported facts) and, as is more fully discussed below, the Third-Party Defendant is not entitled to judgment as a matter of law, summary judgment in this case is not proper.

## II.   THIRD-PARTY DEFENDANT'S ARGUMENT THAT IT HAS NO LIABILITY BECAUSE IT WAS NOT LICENSED HAS NO MERIT AND HAS NO BEARING ON THE THIRD-PARTY COMPLAINT FOR INDEMNIFICATION AND CONTRIBUTION.

Despite Compton's insistence otherwise, its status as a licensed or unlicensed home improvement contractor is irrelevant to whether it is liable for negligence.  Compton correctly notes that contractors who wish to perform "home improvement" as defined by the statute must be licensed under Maryland law.  Md. Code Ann., Bus. Reg. § 8-301.  Compton also correctly cites Maryland case law that unlicensed contractors will not be aided by the courts in an effort to enforce contracts for home improvement.  *See Berenter, Inc. v. Berman*, 258 Md. 290, 265 A.2d 759 (1970).  "If a statute requiring a license . . . is regulatory in nature for the protection of the public . . . an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy."  *Berenter*, 258 Md. at 293 (citing *Snodgrass v. Immler*, 232 Md. 416, 194 A.2d 103 (1963)).  However, Compton's argument that such contracts are simply invalid, and its leap to the conclusion that this precedent shields it from contractual liability are both without merit.

The case law does not suggest that homeowners such as the van Agtmaels would be prevented from enforcing a contract *against* an unlicensed contractor.  The rulings are clear that unlicensed contractors will not be aided by the courts.  *See id.*; *Donmar Md. Hawkesworth*, 46 Md. App. 575, 420 A.2d 295 (1980).  These rulings are founded on the policy underlying the licensing scheme which is to protect the public (homeowners).  A homeowner who has contracted with an unlicensed contractor has not violated the statute, and has done nothing wrong (aside from not being sufficiently conscientious in their selection of a contractor).  In the situation where a homeowner seeks to enforce a contract against an unlicensed contractor, the

underlying public policy which the statutes address, is not offended by allowing the action.  In

fact, it would contradict the regulatory scheme's stated purpose to offer protection to the

unlicensed contractor at the expense of the homeowner.  Therefore, if Compton as an unlicensed

contractor contracted directly with the homeowners, there is no law in support of an argument

that the van Agtmaels (Pacific Indemnity's insureds) could not recover in breach of contract.

The Third-Party Defendant is liable for indemnification and contribution because its

negligent roofing work was a breach of the duty owed to Clay Whaley under the roofing

subcontract, and because its negligent work, installing the tarp in a manner that it allowed for it

to be blown off during a rainstorm, caused the loss for which Plaintiff is suing Clay Whaley.  A

duty that gives rise to a negligence action obviously does not have to come from a contract.

Compton owed Plaintiff's insureds a duty of reasonable care simply by performing work on their

home.  Compton owed Whaley a duty to perform with reasonable care as its subcontractor.  A

breach of these duties gives rise to liability regardless of Compton's status as a licensed or

unlicensed home improvement contractor.  The question of whether Compton's work failed to

meet the standard of reasonable care is a question of fact to be resolved by a jury.  *See infra.*

(proximate cause section).

Equally unpersuasive is Compton's argument that it had no responsibility for the roofing

job and merely provided labor.  Compton argues in its memorandum that as a party without a

home improvement contractor's license, and as one who only provided labor, it cannot be

"responsible" for the job.  It is true that the homeowners (or their insurance carrier) could not sue

the Third-Party Defendant for breach of contract if the work was never done, or did not meet the

contract's specifications.  Compton cannot breach an agreement it was not a party to, and in that

-8-

way responsibility under the contract with the van Agtmaels is Whaley's alone.  However, the

simple fact that the Third-Party Defendant was not a party to the contract does not obviate it of

all responsibility regarding the job.  Compton still has a common law duty to perform its work

with reasonable care.  *See Crockett v. Crothers*, 264 Md. 222, 227, 285 A.2d 612, 615 (1972);

*Klein v. Dougherty*, 200 Md. 22, 30, 87 A.2d 821, 825 (1952) (discussing the duty of care owed

by a subcontractor); *see also Bilt Rite of Augusta, Inc. v. Gardner*, 472 S.E.2d 709 (Ga. Ct. App.

1996) (addressing standard of care owed when contractor is performing roofing work).  Similarly

the fact that Compton provided labor, and no materials or supplies for the job does not relate to

whether its performance was negligent.  If the Third-Party Defendant performed its labor in a

negligent manner and it is shown to have caused the Plaintiffs' alleged loss; Whaley is entitled to

indemnification and contribution.  The question of the Third-Party Defendant's negligence is one

for the finder of fact and, therefore, Compton's request for summary judgment should be denied.

*See infra*.

## III.   WHETHER THERE IS A CONTRACTUAL OBLIGATION PURSUANT TO A NOVATION IS VERY MUCH AN ISSUE OF FACT

Compton has argued throughout its Motion for Summary Judgment that is not liable to

Clay Whaley under a number of contractual theories.  While Clay Whaley is contesting the

legality of each such argument, it is worth reiterating that this lawsuit (and third-party complaint)

pertain to the negligent installation of the tarp in addition to the contractual obligations relating

thereto.  Nonetheless, the Third-Party Defendant has taken the position that there was a novation

that did not include installing the tarps and, therefore, it is not liable for its negligent installation

thereof.

A novation includes the following elements: a previously valid contract; the agreement of all the parties to a new and valid contract; and "extinguishment of the old contract, by the substitution for it of the new one. . . ." *Russ v. Barnes*, 23 Md. App. 691, 696, 329 A.2d 767, 770 (1974). It is difficult to discern exactly what the Third-Party Defendant's argument regarding novation is or how it would relieve Compton of liability for its negligent installation of the tarps at the van Agtmael property. Compton's Memorandum in Support cites a host of non-relevant and disputed facts in support of their argument. Seemingly, its argument appears to be that because Mr. Compton injured himself and his company was no longer able to perform the task that Compton agreed to do, the Third-Party Defendant was relieved of performing any tasks relating to the contract or *any* work on the roof in a non-negligent manner. Nonetheless, in short, Compton's contractual obligation with respect to tarp installation is in dispute. Compton performed roofing work at the van Agtmael residence pursuant to an agreement with Clay Whaley both before and after the storm. Likewise, it agreed to install the tarps at the property. Mr. Jordan has testified that tarp installation is an unpaid for part of roofing work. *See* Ex. C at p. 139  Accordingly, while Compton appears to argue that the post-Compton injury agreement between Compton and Whaley amounted to a novation that did not include tarp installation, such an argument amounts to a material dispute as to material facts, thereby negating summary judgment.

**IV.   IF THE CONTRACT BETWEEN CLAY WHALEY AND THIRD-PARTY DEFENDANT IS AMBIGUOUS, ITS INTERPRETATION IS A MATTER FOR THE FINDER OF FACT.**

Subsection (c) of the Third-Party Defendant's Memorandum in Support includes a number of legal conclusive statements that do not cite authority as well as factual assertions that are simply incorrect, in dispute or improperly substantiated.

For instance, Compton cites to Plaintiff's expert's report in support of an argument that wooden boards should have been used to secure the edge of the tarps. *See* Compton's Memorandum in Support at pages 23-24. That document is not authenticated and, accordingly, the Court should disregard any argument pertaining thereto. *See infra* (§ IX). Regardless, there is no evidence that anyone from Compton informed Mr. Whaley that they were going to need boards to secure tarp. Furthermore, Mr. Jordan, who has fifteen years of roofing experience and has fastened tarps to roofs on many occasions, testified that he had *never* installed tarp using perimeter boards. *See* Ex. C (Jordan depo.) at p. 152.

The last two sentences of the first full paragraph of page 24 of Compton's Memorandum in Support contain unfounded and untrue factual insinuations. Mr. Jordan has testified that the wind conditions made the work "irritating" not "very difficult." *See* Ex. C (Jordan) at p. 101. Likewise, there is no factual evidence to support an assertion that Compton was only "barely able" to cover the roof. At the top of page 25, it is stated that the storm, which arrived early the next morning, was "impending," but that statement does not cite to the record.

The fourth full paragraph of the page 24 of Compton's Memorandum in Support contains similar problems. There is no evidence to support a statement that "[t]he work was not professionally done." Likewise, there are no statements in the Mr. Dozzi's report or affidavit

-11-

which would indicate that the other subcontractor improperly supervised his employees.  (If there were, such a statement would not be based on Mr. Dozzi's personal knowledge.  *See infra* (§ X)).

The last sentence of page 26 of Compton's Memorandum in Support consists of unsubstantiated speculation.  There is no evidence that damage would have been greater.  There is simply nothing in the record that would indicate what *might* have happened had they not called Clay Whaley and agreed to install the tarp.

The Third-Party Defendant then asserts that there was no contract because any contractual agreement with respect to the tarps was ambiguous.  Again, as asserted in the facts section, Compton was working on the roof both before and after the storm and had agreed to install tarps after speaking with Clay Whaley.  Whether there was a contract is very much a factual dispute and, to the extent that it was ambiguous, any contractual interpretation is for the finder of fact to determine.  Nonetheless, Compton's liability arises from its agreement to fasten the tarps to the roof.  *See Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 539-40, 515 A.2d 756, 762 (1986); *Brady v. Parsons*, 82 Md. App. 519, 534-35, 572 A.2d 1115 (1990);  *Morgan v. Metropolitan Fuels, Inc.*, 25 Md. App. 598, 601, 334 A.2d 553, 555 (1975) (acknowledging a duty by agreeing to undertake a task).

In order to determine the contractual obligations of the parties to an ambiguous contract, it is necessary to ascertain the intent of the contracting parties.  *See Cinocca v. Baxter Laboratories, Inc.*, 400 F. Supp. 527, 532 (E.D. Okla. 1975).  In such a situation, summary judgment is improper.  *See Cram v. Sun Ins. Co.*, 375 F.2d 670, 674 (4th Cir. 1967) ("the intent of the parties to an ambiguous contract is a question of fact which cannot be properly resolved on motions for summary judgment.") (citations omitted); *see also Nafco Oil & Gas, Inc. v.*

*Appleman*, 380 F.2d 323, 324 (10th Cir. 1967 (discussing the parol evidence rule and stating that

the intent of contracting parties was a question of fact).

## V.    EVEN IF COMPTON & SONS WAS A GOOD SAMARITAN, THAT DEFENSE IS NOT APPLICABLE IN THIS CASE .

Whether Messrs. Jordan and Compton were acting as Good Samaritans is very much a

question of fact.  However, even if they were in fact "Good Samaritans" under Maryland law,

they are not relieved of tort liability.

Again, the Third-Party Defendant resorts to stating facts that are entirely unsupported.

For instance, there is absolutely *no evidence* in support of its contention that there was no time to

use wooden boards to secure the tarp.  *See* Compton's Memorandum in Support at p. 28.  Such a

factual statement is entirely speculative.

In the interest of clarity, it must first be noted (assuming *arguendo* that there was no

contract) that Compton was not acting as a "Good Samaritan" under Maryland law, but rather as

one who voluntarily undertook a duty.  It is clear that Compton intends to refer to the common

law Good Samaritan doctrine in its memorandum.  However, Maryland has a codified "Good

Samaritan" Act.  Md. Code Ann., Cts. & Jud. Proc., § 5-603.  The statute only applies to medical

and emergency personnel in emergency situations.  Maryland, like many states, has enacted a law

to protect persons providing emergency medical assistance from civil liability that might arise

from that assistance.  The statute includes very specific scenarios when the defense is available,

that are not applicable to subcontractors that negligently perform work.  In short, neither

Compton nor its employees were medical personnel and, therefore, the statute is irrelevant.

It is significant that Compton admits that Restatement (Second) of Torts, § 324A is applicable in these circumstances, and adopted in Maryland. This section of the Restatement reads:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> > (a) his failure to exercise reasonable care increases the risk of such hard, or
>
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

In this case the Third-Party Defendant has alleged that Whaley alone had a duty to the Plaintiff and its insureds. Therefore, when Compton undertook the task of placing tarps over the roof (whether or not it was contracted to do so) it was providing a service to Whaley ("*render services to another*"). The Third-Party defendant took this action in an effort to protect the van Agtmaels' home from rain water ("*for the protection of a third person or his things*"). It is important to note that while the provision reads "physical harm" Comment b to Restatement (Second) of Torts, § 324A establishes that the section applies to "physical harm to the third person *or his things*" (emphasis added). *See Cessna Aircraft Co. v. Metropolitan Topeka Airport Auth.*, 940 P.2d 84, 92 (Kan. Ct. App. 1997) (stating that Comment b makes § 324A applicable to property damage in a case involving fire damage to an airport hangar). Therefore, damage to Plaintiff's insureds' home is very much within the scope of this section.

-14-

The provision simply states that in this situation the party who voluntarily undertakes a task, or assumes a duty, owes a standard of care that is no different from any other negligence action; reasonable care in performance is required. "Negligence is the failure to use reasonable care under the circumstances." *Williams v. Prince George's County*, 112 Md.App. 526, 551, 685 A.2d 884 (1996). Therefore, regardless of whether Compton was to place these tarps pursuant to its duties as the roofing subcontractor, if it was negligent in its placement of the tarps, it is liable to the homeowner for damages. It is Compton's negligence that Plaintiff Pacific Indemnity is seeking redress for in this action and, therefore, Clay Whaley is entitled to indemnification and/or contribution from the Third-Party Defendant.

The Third-Party Defendant also raises the issue of "exigent circumstances" in its memorandum.[2] "Exigent circumstances" is a term of art that is generally reserved for criminal procedure matters, and is used as a justification for police officers to make a warrantless search. *State v. Carroll*, 383 Md. 438, 859 A.2d 1138 (2004). Compton likely means to suggest that it was confronted with an emergency and that the emergency doctrine should be applied. The "emergency doctrine" is defined by as a legal principle exempting a person from the ordinary standard of reasonable care if that person acted instinctively to meet a sudden and urgent need for aid. Black's Law Dictionary (7th ed. 1999). The "emergency rule" is only applicable in those situations in which the actor is in a position of peril. *See Warnke v. Essex*, 217 Md. 183, 186-87, 141 A.2d 728 (1958). Instinctive action was not required in these circumstances. Prior to beginning work with the tarps, Compton had time to call Clay Whaley and discuss the fact that

---

[2]      Whether there were in fact "exigent circumstances" is a question of fact. What is undisputed is that Compton was working on the tarp on the afternoon before the storm and that Mr. Jordan found the situation on the roof "irritating." *See* Ex. C at p. 101.

portions of the roof were susceptible to the possibility of inclement weather. *See supra* (facts). Even if Compton was exempted from the ordinary standard of reasonable care, summary judgment would not be appropriate. Emergency situations still give rise to jury questions. "Whether he was negligent in the action he took in the face of the emergency, or whether he used reasonable care under the circumstances is ordinarily a jury question." *Effler v. Webber*, 18 Md.App. 162, 305 A.2d 485 (1973) (citing *Lehmann v. Johnson*, 218 Md. 343, 146 A.2d 886 (1958) and addressing a motor vehicle tort case, a situation where the doctrine of emergency often arises).

Perhaps the most problematic aspect of Compton's argument regarding its Good Samaritan status is the statement on page 28 of its Memorandum in Support: "Compton & Sons did not fail to exercise reasonable care in placing the tarps." By admitting that Restatement (Second) of Torts, § 324A is applicable in this case, Compton admits that its actions must have met the standard of reasonable care. Stating that Compton did not fail to meet its standard of care is not an argument supportive of summary judgment. It acknowledges a question of fact–i.e. whether Compton exhibited reasonable care–exists. Furthermore, the question of whether one has breached the applicable standard of care is generally a question of fact that is solely within the province of the jury. "[W]hether there is adequate proof of the required elements to succeed in a negligence action is a question of fact to be determined by the fact-finder. *See Patton v. United States of America Rugby Football*, 381 Md. 627, 636, 851 A.2d 566 (2004).

Therefore, because the "Good Samaritan" doctrine requires Compton to prove that it acted with reasonable care, Compton's Motion for Summary Judgment should be denied. *See infra* (standard of care section).

## VI.   CLAY WHALEY IS ENTITLED TO INDEMNIFICATION AS WHATEVER NEGLIGENCE IT HAD WAS PASSIVE TO THAT OF ACTIVE TORTFEASOR, THE THIRD-PARTY DEFENDANT

Included in the Third-Party Defendant's Memorandum in Support of its Motion for

Summary Judgment is an argument that it was not the active tortfeasor and, therefore, Clay

Whaley is not entitled to indemnification.  At the onset, it is worth mentioning that Clay

Whaley's undersigned counsel had contemplated filing a motion requesting indemnification in

full from the Third-Party Defendant.  However, as the amount of damages has not been

established, such a motion would not be ripe for consideration by this Court.

Compton's argument on indemnification consists of conclusive statements of law only -

that is, the Memorandum in Support cites to the law and merely states that it was not the active

tortfeasor.  As is more fully discussed below, Compton, in failing to properly secure the tarps to

the van Agtmaels' roof, was very much the primary and active tortfeasor.

Of course, a right to indemnification can be found in certain situations irrespective of the

lack of a contract.  *See Hanscome v. Perry*, 75 Md. App. 605, 615, 542 A.2d 421 (1988).  In

*Bloom v. Good Humor Ice Cream Co.*, 179 Md. 384, 18 A.2d 592 (1941), the Court of Appeals

stated, "where the negligence of any one person is merely passive, and potential, while the

negligence of another is the moving and effective cause of the injury, the latter is the proximate

cause and fixes the liability."  *Bloom*, 179 Md. at 387.  This rule of active negligence is

commonly used to provide indemnification for the party who negligence was merely passive.

"Indemnity requires that, where one of the wrongdoers is primarily liable, that wrongdoer must

bear the whole loss."  *Baltimore County Community Colleges v. RTKL Associates*, 80 Md. App.

45, 55, 559 A.2d 805 (1989) (citing *Park Circle Motor Co. v. Willis*, 201 Md. 104, 113, 94 A.2d

443 (1952)); *see also Adams v. NVR Homes, Inc.*, 135 F. Supp.2d 675, 713 (D. Md. 2001) (J.

Harvey) (discussing the active/passive rule in a case involving claims against homebuilders);

*Kelly v. Full Wood Foods, Inc.*, 111 F. Supp.2d 712, 714 (D. Md. 2000) (J. Motz) (contaminated

food case against fast food restaurant).

Here, Compton & Sons undertook the responsibility for replacing the roof. As the

subcontractor, it was the entity actively engaged on the roof on a daily basis and whose

responsibility it was to perform in a workmanlike manner. In anticipation of the storm, the

Third-Party Defendant placed the tarps over the open portions of the roof. Clay Whaley did not

participate in the placing of the tarps or in selecting the method for affixing them. It is the

negligent securing of the tarps which is the crux of the Plaintiff's subrogation suit against Clay

Whaley. *See generally Complaint* at p. 4 (alleging that Clay Whaley was liable because the tarp

was not properly fastened).

## VII.   THIRD-PARTY DEFENDANT'S FAILURE TO PROPERLY SECURE THE TARP WAS THE PROXIMATE CAUSE OF THE DAMAGE TO PLAINTIFF'S INSUREDS' HOUSE.

The Third-Party Defendant next argues that it is entitled to summary judgment because its

failure to properly secure the tarps was not the proximate cause of the damage to the van

Agtmael property. Such a determination requires a finding of fact thereby precluding summary

judgment on that issue. Indeed, the Third-Party Defendant acknowledged that there was a factual

dispute as to the proximate cause of the damage to the van Agtmael property. "*Arguably*, the

direct and proximate cause of plaintiffs' [*sic*] injuries was the failure of Whaley and his

subcontractor Villataro to remove the existing roof in a reasonable and prudent manner."

Compton's Memorandum in Support at p. 32 (emphasis added). Yet, despite this admission, the

-18-

Third-Party Defendant myopically trudges onward with its motion for summary judgment as if there is no dispute as to its negligence.

Compton's acknowledgment of a dispute as to a material fact aside, when the evidence of proximate cause is such that "reasonable men may differ in their conclusions" summary judgment is not proper. *See Cornias v. Pipkin*, 246 Md. 339, 345, 228 A.2d 608 (1967). For a recent Court of Special Appeals case stating that proximate cause is ordinarily left to the fact finder see *Collins v. Li*, 176 Md. App. 502, 933 A.2d 528 (2007). In the instant case, the failure to properly secure the tarps was such that at the very least there is a question of fact as to property damage to the van Agtmael property. *See Griffith v. Southland Corp.*, 94 Md. App. 242, 250-51, 617 A.2d 598 (1992) ("negligence which constitutes a proximate cause of an injury need not necessarily be the sole cause.") (citations omitted).

Here, the Third-Party Defendant failed to adhere to the standard of care associated with the installation of the tarp and, therefore, its failure to properly secure the tarps caused the property damage that is the subject of this case. The factual dispute is raised in the Plaintiff's Answers to Interrogatories wherein it is stated that the damages were caused by negligent tarp installation. *See* Plaintiff's Answers to Interrogatories numbered one and four attached hereto as Exhibit D.[3] Thus, there is a factual dispute as to the nature of the Plaintiff's insureds' damages and proximate cause. In short, it appears as though the issue of proximate cause may amount to a battle of the experts scenario. When there is conflicting expert witness testimony, an issue of fact is created which precludes summary judgment. *See Lust v. Clark Equipment Co., Inc.*, 792

---

[3]  Assertions that Whaley installed the tarp as set forth in Plaintiff's interrogatory answers are incorrect. As stated by Compton throughout its Memorandum in Support, Compton was responsible for fastening the tarp.

F.2d 436, 439 (4ᵗʰ Cir. 1986) (agreeing with the Fifth Circuit's opinion in *Grenada Steel Indus. v. Alabama Oxygen Co.*, 695 F.2d 883 (5ᵗʰ Cir. 1983)); *Baltimore & O.R. Co. v. Deneen*, 167 F.2d 799, 801 (4ᵗʰ Cir. 1948).

Accordingly, the Third-Party Defendant's argument pertaining to proximate cause fails as the proximate cause of the property damage at the van Agtmael property consists of factual issues that are in dispute.

## VIII.   THE ECONOMIC LOSS RULE IS NOT APPLICABLE TO THE CLAIMS ASSERTED BY THE PLAINTIFF (OR THE THIRD-PARTY PLAINTIFF).

Compton has argued that the economic loss rule bars Clay Whaley's Third-Party Complaint. This argument overlooks the fact that the damages alleged by the Plaintiff Pacific Indemnity pertain to property damage. Consequently, in this subrogation case alleging property damage, the economic loss rule does not apply.

In products liability cases, when one purchases an item that causes physical injury or property damage, one may recover and the economic loss rule does not apply. *See A.J. Decoster Co. v. Westinghouse Elec. Corp.*, 333 Md. 245, 250, 634 A.2d 1330 (1994).[4] Thus, in products liability cases, courts have generally held that damage to the product itself is an economic loss. *See id.* Thus, "a manufacturer may be held liable for physical injuries, including harm to property, caused by defects in its products. . . ." *Id.* at 251. Such is not the case where the loss is purely economic. In the instant case, the van Agtmaels' insurer has sued for property damage and such damages are not an economic loss. "Economic losses include such things as the loss of

---

[4]      The Third-Party Defendant acknowledges those situations in which the economic loss rule does not apply. *See* Compton's Memorandum in Support at pg. 34. But then disregards that analysis and argues how the *Whiting-Turner* exception to the economic loss rule is not applicable to the instant case and the Third-Party Complaint.

value or use of the product itself, the cost to repair or replace the product, or the lost profits resulting from the loss of use of the product." *Id.* at 250. Thus, in negligence cases, such as the instant case, tort liability includes damages for physical harm to a person or property (such as the damages claimed by the van Agtmaels' insurer). *See Pulte Home Corp. v. Parex, Inc.*, 174 Md. App. 681, 736-37, 923 A.2d 971 (2007) (stating that the economic loss rule does not bar recovery for property damage).

The Supreme Court has weighed in on the economic loss issue and defined an economic loss as a loss that does *not* pertain to an injury to a person or property damage. *See East River Steamship Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 870 (1986).

The Third-Party Defendant incorrectly asserts that it is not liable due to the fact that it had no contractual privity with the van Agtmaels. In *Council of Co-Owners of Atlantis Condominium, Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 517 A.2d 336 (1986), the Court of Appeals addressed the economic loss rule in the context of a defective construction case. In doing so, it stated that "privity of contract is not an absolute prerequisite to the existence of a tort duty." *See id.* at 32, 517 A.2d at 344. The *Whiting-Turner* court continued by stating that while the economic loss bars rule bars recovery for losses that are purely economic, a contractor is still liable in tort for property damage. *See id.*

Here, the van Agtmaels' insurer has sued for significant property damage caused by the tarp coming loose during the storm. Thus, Pacific Indemnity's claims pertain entirely to property damage and are not barred by the economic loss rule.

**IX.   THE THIRD-PARTY DEFENDANT'S MOTION IMPROPERLY CITES FACTS WHICH PERTAIN TO UNAUTHENTICATED DOCUMENTS OR A DISPUTE OF FACT.**

Third-Party Defendant's Motion for Summary Judgment is replete with factual assertions that are either unsubstantiated, backed up by unauthenticated documents or are in dispute. Such reliance is not proper.

As dictated by Federal Rule 56(e), documents that are unsworn or unauthenticated cannot be used in support of a summary judgment motion. "It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment." *Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993). To the extent that a motion for summary judgment relies on documentary exhibits, such documents must be attached to an affidavit as provided by F.R.C.P.56(e). *See id.* This Court has addressed this issue in a case in which it was alleged that the Fair Labor Standards Act (FLSA) and Maryland's companion statute were violated due to a failure to pay overtime. *See Turner v. Human Genome Sciences, Inc.*, 292 F.Supp.2d 738 (D. Md. 2003) (J. Chasanow). In the *Turner* case, when replying to an opposition to a motion for summary judgment, the Defendant submitted an unsworn expert report in support of that reply. The court held that this was improper and, in doing so, stated that "unsworn statements or expert reports do not qualify as affidavits and are not proper for consideration by the court when ruling on a motion for summary judgment." *Id.* at 743 (citations omitted).

In the instant case, the Third-Party Defendant has submitted an expert report as well as an affidavit by that expert in support of its motion. For a number of reasons which are more fully addressed in the next section, that affidavit and report are improper and, consequently, should be

-22-

stricken. That said, there are a number of instances throughout the Third-Party Defendant's motion where unauthenticated documents are relied upon or, in some cases, entirely unsupported.

Accordingly, to the extent that the Third-Party Defendant's motion relies upon such unauthenticated documents or documents that have not produced by Clay Whaley, it should be stricken as improperly supported. *See generally Prime Ins. Syndicate, Inc. v. Damaso*, 471 F.Supp.2d 1087, 1093 (D. Nev. 2007) (stating that only authenticated documents, such as ones that are produced by a *party opponent* can be used to support a motion for summary judgment). Page ii of Compton's Memorandum in Support sets forth such documents: Exhibits numbered 2, 6, 13, 14, 17, 18, 19 and 21; these documents are *all* unauthenticated and/or unsworn. Third-Party Defendant attempts to circumvent the rule concerning the unauthenticated documents by having its expert, Victor D. Dozzi, attest to their authenticity. *See* Ex. 4 to Compton's Memorandum in Support. Victor Dozzi is not the proper person to authenticate such documents and, therefore, those arguments that rely upon such documents should be disregarded in deciding the Third-Party Defendant's motion.

Federal Rule 56(e) states that an affidavit in support of a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Accordingly, documents in support of a motion for summary judgment "must be authenticated" and an affiant purportedly authenticating such documents "must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Sullivan*, 764 F. Supp. 1053, 1055-56 (D. Md. 1991) (J. Murray). The *Sullivan* case was a Title VII lawsuit based on *inter alia* sexual harassment. This Court held

-23-

that exhibits attached to the defendant's motion for summary judgment which were not sworn or otherwise authenticated were to be "stricken from the record." *Id.* at 1056.

Here, the Third-Party Defendant's expert's affidavit indicates that documents attached to Third-Party Defendant's Memorandum in Support are "true and authentic copies" of documents that he reviewed. *See* Ex. 4 to Compton's Memorandum in Support at ¶¶ 6-7.

Again, Mr. Dozzi is not in position to authenticate such documents. The United States Court of Appeals for the Ninth Circuit addressed a similar issue in *Hal Roach Studios, Inc. v. Richard Feiner and Company, Inc.*, 896 F.2d 1542 (9th Cir. 1990), a case involving licensing rights for films. That court found that the district court had erred in considering a motion for summary judgment that had an unauthenticated document as an exhibit, even though it was accompanied by an affidavit. The moving party's corporate counsel had submitted a Registration Statement filed with the Securities and Exchange Commission and had also executed an affidavit which provided the corporate history of the moving party. *See id.* at 1550-51. The Ninth Circuit found that the district court's reliance on that document was misplaced as the affiant lacked the personal knowledge required to authenticate the document. *See id.* at 1551. Such an affiant must be a "person through whom the exhibits could be admitted into evidence." *Id.* at 1550 (citations omitted).

The situation in the *Hal Roach* case is analogous to the instant case wherein Compton's expert states that the documents are authentic copies of originals. Yet, there is no evidence that he either prepared these documents or saw them prepared. Particularly egregious is his statement that the documents from CertainTeed "are true and authentic copies those documents. . . ." Compton's Memorandum in Support, Ex. 4 at ¶ 7; *see also* Compton Memorandum in Support at

-24-

p. 20 (discussing the CertainTeed documents and Mr. Dozzi's findings). There is absolutely no evidence that Mr. Dozzi played any role in the drafting of those documents or witnessed the preparation thereof. Without such evidence, the documents are not authenticated and Compton's motion, to the extent that it relies on such documents, should be denied. *See* Fed.R.Evid. 901 (setting forth approved methods of authentication).

Unsupported factual assertions by the Third-Party Defendant include those on page two of Compton's Memorandum in Support wherein it is asserted that the property was "abandoned" by another subcontractor and "left exposed to the elements." This insinuation that when a storm was approaching another subcontractor left the property and roof exposed is unsubstantiated. There is no evidence of when the other subcontractor left the property the day before the storm caused the damage. What is known is that Messrs. Compton and Jordan called Clay Whaley and agreed to put tarp on the roof on the afternoon before the storm. *See supra* (discussing facts). Early the next morning, a storm came through the Easton area and presumably caused one of the tarps to be pulled off of the roof. *See supra.*

Along those same lines, the Third-Party Defendant makes the factual assertion that Clay Whaley's other subcontractor "had gone home" the afternoon before the storm. There is no factual basis for such a statement. During their depositions, Messrs. Jordan and Compton did not even speculate that this other subcontractor had gone home. *See* Ex. B at p. 60, Ex. C at p. 89.

On page sixteen of Compton's Memorandum in Support, it states that Compton understood that Whaley "had full responsibility for the job." Yet, no evidence is cited in support of a contention that Whaley would indemnity or accept "full responsibility" for Compton's failure to properly fasten the tarp to the roof. Indeed, such an agreement to indemnify Compton

-25-

for Compton's negligence would be void as against public policy.  Section 5-401 of the Courts &

Judicial Proceedings Article of the Maryland Code provides as follows:

> (a) *Construction industry* - A covenant, promise, agreement or
> understanding in, or in connection with or collateral to, a contract
> or agreement relating to the construction, alteration, repair, or
> maintenance of a building, structure, appurtenance or appliance,
> including moving, demolition and excavating connected with it,
> purporting to indemnify the promisee against liability for damages
> arising out of bodily injury to any person or damage to property
> caused by or resulting from the sole negligence of the promisee or
> indemnitee, his agents or employees, is against public policy and is
> void and enforceable.  This section does not affect the validity of
> any insurance contract, workers' compensation, or any other
> agreement issued by an insurer.

The Court of Appeals has held that such indemnification agreements are "unequivocally" void as

against public policy. *See Bethlehem Steel Corp. v. G.C. Zarnas & Co., Inc.*, 304 Md. 183, 185-

86, 498 A.2d 605 (1985).

    The Third-Party Defendant also makes the assertion that Whaley and Compton never

contracted or agreed for Compton to put the tarps on the roof.  *See* Compton's Memorandum in

Support at p. 3.  Facts concerning the agreement between Whaley and Compton are very much in

dispute.  For instance, throughout the memorandum in support, the Third-Party Defendant asserts

that there was never a contract for Compton to install the tarps.  Yet, Mr. Jordan has testified that

usually a roofing subcontractor does not get paid to install tarps, implying that such a task would

be included in the subcontract.  *See* Ex. C. at p. 139.  Mr. Jordan also testified that prior to the

storm and thereafter, Compton & Sons was working on the roof.  *See* Ex. C. at p. 118-19;

Compton's Memorandum in Support at p. 12; *see also* Third-Party Defendant's Answers to

Interrogatories attached hereto as Ex. E (answers to no. 3 and 6) (describing Compton's version

-26-

of the work that it agreed to perform under the contract with Clay Whaley).[5]   Nonetheless, throughout its memorandum in support, the Third-Party Defendant has taken the position that it was not responsible contractually or otherwise for the negligent installation of the tarps, despite the fact that Compton employees were working on the roof both before and after the storm.

A review of the report of the Third-Party Defendant's expert reveals where Compton's counsel obtained a substantial portion of the above-discussed unsubstantiated averments.  Indeed, it appears as though Compton's counsel simply copied their expert's report verbatim in support of the factual assertions it makes it in its memorandum in support (or perhaps it was vice versa). *See* Compton's Memorandum in Support (facts section) and Ex. 3.  Nevertheless, there is no evidence in support of many of Mr. Dozzi's assertions set forth on page two of that report:

- There is no evidence that "Villataro's crew had gone home."

- There is no evidence that the other subcontractor (or for that matter Whaley) knew or should have known of the approaching storm.  Any such evidence would be speculative in nature.

- Mr. Dozzi's report insinuates that Messrs. Jordan and Compton simply began work as "Good Samaritans" when they saw that the roof was exposed.  While the legality of the Good Samaritan argument has no merit, what is worth mentioning is the fact that Jordan and Compton conferred with Clay Whaley and, upon discussing the issue with Mr. Whaley, agreed that they would put on the tarp.

---

[5]   It is worth noting that despite assertions to the contrary in Compton's Answers to Interrogatories, there is absolutely no evidence that Clay Whaley or anyone else employed "migrant workers" to perform roofing work at the van Agtmael property.  Indeed, Mr. Compton himself testified that he did not even know what a migrant worker is.  Unbelievably, this inflammatory language pertaining to an unsubstantiated stereotype appears to have been supplied by the Third-Party Defendant's *counsel*. *See* Ex. B at 119-20.

- There is no evidence that the installation of the tarp was "extremely dangerous" or that there was strong wind which would have made it difficult to fasten the tarp to the van Agtmaels' roof.  Rather, Mr. Jordan has testified that the conditions on the roof made the job "irritating" and that whatever wind there was did not impede Compton's ability to install the tarp. *See* Ex. C at 101.

- There is no evidence that Mr. Compton worked at the van Agtmael property the day after the storm because he "wanted to prevent the growth of mold."  *See* Compton's Memorandum in Support at p. 12, and Ex. 3 to their Memorandum in Support at p. 3.

In short, there are many facts that are unsubstantiated or are in dispute.  Further, the Third-Party Defendant's Memorandum in Support cites to and relies upon documents that are not admissible and, therefore, the Third-Party Defendant's motion should be denied.

## X.     SUMMARY JUDGMENT IS IMPROPER BECAUSE THE THIRD-PARTY DEFENDANT'S EXPERT'S AFFIDAVIT AND REPORT ARE NOT ADMISSIBLE AS THEY INCLUDE FINDINGS OF LAW

The report of Victor Dozzi ("Dozzi") as well as his Affidavit which were attached to Compton's Memorandum in Support as Exhibits 3 and 4 respectively, both contain impermissible expert testimony, as both present legal conclusions.

In general, when affidavits are attached to summary judgment motions, they may not consist of conclusory statements or arguments.  When there are such statements in an affidavit that are not based upon the affiant's personal knowledge, "such inclusions will be stricken and given no weight [when considering a] summary judgment motion." *Murphy v. Ford Motor Co.*, 170 F.R.D. 82, 85 (D. Mass. 1997) (discussing conclusory affidavits in a case alleging a defective airbag).

Likewise, when expert witness testimony includes legal conclusions that will determine the outcome of a case, it is inadmissible. *See In re Ocean Bank*, 481 F.Supp.2d 892, 898 (N.D. Ill. 2007) (stating that courts will not admit evidence that is comprised entirely of legal conclusions). Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony. The Rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. Accordingly, opinion testimony is only admissible when it will be helpful to the trier of fact. *See Guidroz-Brault v. Missouri Pacific Railroad Co.*, 254 F.3d 825, 829 (9th Cir. 2001) (stating that an expert witness testimony must "relate to scientific, technical, or other specialized knowledge, which does not include unsupported speculation and subjective beliefs.") It has been held that testimony that merely states a legal conclusion is *not* likely to assist the trier of fact. *U.S. v. Barile*, 286 F.3d 749, 760 (4th Cir. 2002) (citing *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir.1997) (*Barile* was a criminal case, but evidentiary issues under Rule 704 are not impacted by the criminal/civil distinction). "[T]estimony offering nothing more than a legal conclusion-i.e., testimony that does little more than tell the jury what result to reach-is properly excluded under the Rules." *Barile*, 286 F.3d at 760 (citing Weinstein's Federal Evidence 704.04[2][a] (2d ed. 2001) ("The testimony supplies the jury with no information other than the witness's view of how the verdict should read").

Due to the consensus that it is not helpful to a jury, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *U.S. v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006) (citing *Barile*, 286 F.3d at 760). In distinguishing impermissible legal conclusions from allowable expert testimony, courts will look for a witness's use of terms that have "a separate, distinct, and specialized meaning in law different from that present in the vernacular." *Barile*, 286 F.3d at 760. Testimony that actions constituted "extortion," that a dog bite amounted to "deadly force," and that a product was "unreasonably dangerous" have all been excluded. *Id.* (citations omitted).

In a declaratory judgment action involving an insurance coverage dispute which the insured initiated, the Eastern District of New York held that an expert who was named by the insurance carrier, could not testify. *See Breezy Point Cooperative, Inc. v. CIGNA Prop. & Cas. Co.*, 868 F. Supp. 33 (E.D.N.Y. 1994). In this matter, CIGNA had issued two disclaimers to the insured on the grounds that they had received late notice of the personal injury claims. The insurer/defendant named an expert that proposed to testify that the insured did not provide timely notice as was required by its policies and that the delay was "unreasonable as a matter of law." *Id.* at 36. The court held that this proposed testimony did not comply with Second Circuit's decisions regarding expert witness testimony, as the expert would be concluding an issue of law. *Id.*[6]

---

[6]     This notion is not unique to federal decisions concerning expert witness testimony. In an insurance coverage dispute, West Virginia's highest court held the plaintiff's proposed expert should not be allowed to testify as to a conclusion of law. *See Jackson v. State Farm Mut. Auto. Ins. Co.*, 600 S.E.2d 346 (2004). The claim against State Farm was premised on a violation of West Virginia's unfair claim settlement practices statute. *See id.* at 350. On appeal, the insurer contended that the plaintiff's expert witness should not have been allowed to testify on the application of the Unfair Claim Settlement Practices Act. The appellate court agreed and held that the trial court had abused its discretion with respect to allowing the plaintiff's expert to testify in this manner. *See id.* at 355 ("an expert may not testify as to such questions or law as the interpretation of statute . . . or case law . . . or the meaning

In the instant case Dozzi's report states, "[Compton was] under no contractual obligation

to act," and "[Compton] bears no responsibility for the stormwater damage to the [Plaintiffs'

home]." Dozzi's affidavit similarly states, "[Compton] had no contractual obligation to act . . .

[Compton] bears no responsibility for the stormwater damage to the property." *See* Compton's

Memorandum in Support, Ex. 3 and Ex. 4. Obligations under a contract and whether one bears

responsibility (read "whether one is liable") amount to legal conclusions, and as such are

improper testimony from Victor Dozzi.

Testimony regarding the interpretation of contracts is considered an impermissible legal

conclusion. *Marx & Co., Inc. v. Diners' Club Inc.*, 550 F.2d 505 (2nd Cir. 1977). In *Marx*, the

court noted:

> This testimony did not concern practices in the securities business
> on which Friedman was qualified as an expert, but were rather
> legal opinions as to the meaning of the contract terms at issue. It
> was testimony concerning matters outside his area of expertise.
> Moreover, it would not have been possible to render this testimony
> admissible by qualifying Friedman as an expert in contract law. It
> is not for witnesses to instruct the jury as to applicable principles of
> law, but for the judge.

*See id.* at 509-10 (internal citation omitted). Similarly here, Victor Dozzi is a civil engineer, and

his findings that no contractual obligation existed are impermissible. *See In re Ocean Bank*, 481

F.Supp.2d at 898. The interpretation of the subcontract that existed between Whaley and

Compton is obviously outside of Victor Dozzi's area of expertise as an engineer. Further, even if

he were an expert in contract law he would not be permitted to testify to each party's obligations

---

of terms in statute . . . or the legality of conduct.")

party's obligations under the contract.  As such evidence would be inadmissible at trial, it should not be considered when deciding a motion for summary judgment.

Accordingly, because the Third-Party Defendant's motion relies on proper evidence in the form of an affidavit asserting legal and factual conclusions, the motion should be denied.

## CONCLUSION

The Third-Party Defendant's Motion for Summary Judgment should be denied since:

(a)    Any argument pertaining to the fact that the Third-Party Defendant was not licensed has no bearing on a negligence claim or a breach of contract claim against it;

(b)    The contractual arguments set forth by Compton (novation and ambiguity) pertain to factual matters that are to be determined by the fact finder;

(c)    The Good Samaritan defense is not applicable in this scenario;

(d)    Clay Whaley is entitled to indemnification as it was the passive tortfeasor;

(e)    The proximate cause of the loss to the Plaintiff's insureds' property concerns an issue of fact;

(f)    The economic loss rule does not apply to this case and the Third-Party Complaint.

(g)    The motion relies upon improperly supported facts and/or facts that are in dispute;

(h)    Compton's motion relies upon unauthenticated and/or unsworn documents; and

(i)    The Third-Party Defendant's expert's Affidavit includes conclusions of law and also relies upon unsubstantiated facts;

For the foregoing reasons, the Defendant/Third-Party Plaintiff respectfully requests that this Honorable Court deny the Third-Party Defendant's motion for summary judgment.

Respectfully submitted,

_/s/_ _____

Robert L. Hebb, Federal Bar No.: 23425
Kurt C. Schultheis, Bar No.: 26326
Semmes, Bowen & Semmes
250 W. Pratt Street, 16th Floor
Baltimore, Maryland  21201
(410) 539-5040

*Attorneys for Defendant,*
*Clay H. Whaley, individually and*
*d/b/a C. H. Whaley & Son, Inc.*

B0784989.WPD

-33-