IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| PACIFIC INDEMNITY COMPANY, <br> As subrogee of Antoine and Emily <br> van Agtmael <br><br> Plaintiff, <br><br> v. <br><br> CLAY H. WHALEY, individually and <br> d/b/a C.H. WHALEY & SON, INC. <br><br> Defendant. <br>_____ <br><br> CLAY H. WHALEY, individually and <br> d/b/a C.H. WHALEY & SON, INC. <br><br> Third-Party Plaintiff <br><br> v. <br><br> COMPTON & SONS <br><br> Third-Party Defendant | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> *    Civil No. JFM 07-826 <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> ***** |

**MEMORANDUM OPINION**

Plaintiff Pacific Indemnity Company ("Pacific Indemnity"), as insurer and subrogee of Antoine and Emily van Agtmael, has brought suit against defendant Clay H. Whaley d/b/a C.H. Whaley & Son, Inc. ("Whaley"). (Compl. ¶¶ 1-16.) Plaintiff alleges that as a result of Whaley's negligence, breach of contract, and breach of warranty in removing and replacing the roof of the van Agtmaels' residence, rainwater infiltrated the residence through the exposed roof on or about May 9, 2004, causing over $800,000 in damages. (*Id.* ¶¶ 17-27.) Whaley has in turn filed a third-party complaint against a subcontractor, Compton & Sons. (Third-Party Compl. ¶¶ 1-7.)

Whaley contends that to the extent it may be liable to Pacific Indemnity for the damages alleged in the complaint, it is entitled to indemnity and/or contribution from Compton & Sons, whose "negligence or other breach of duty or conduct" allegedly caused the damages. (*Id.* ¶¶ 8-16.) Specifically, Whaley alleges that Compton & Sons' "negligence includes, but is not limited to, failing to properly secure a tarp to the [van Agtmaels'] residence." (*Id.* ¶ 10.) Compton & Sons has moved for summary judgment on several grounds based on contract and tort law, which I discuss *infra*. For the reasons that follow, I will deny Compton & Sons' motion.

I.

The factual record to which both parties essentially agree is as follows. In March 2004, Whaley finalized a contract with Pacific Indemnity's insureds, the van Agtmaels, to remove and replace the roof on their house in Easton, Maryland. (Whaley Contract (Compton & Sons' Mem. Ex. 9); Whaley Dep. at 46, Sept. 20, 2007 (Compton & Sons' Mem. Ex. 10).) Shortly before entering into this contract, Whaley orally subcontracted the removal of the old roof and the installation of the new roof to John Compton and Christopher Jordan of Compton & Sons. (*Id.* at 51-55.) Specifically, Whaley subcontracted to Compton and Jordan to "[r]emove the existing shingles down to the sheathing, install felt paper, copper drip edge, cut ridge vents in, and install the shingles nailed." (*Id.* at 53.)

Compton and Jordan began working on the roofs of the garage and the breezeway of the van Agtmaels' residence during the first week of May 2004. (*Id.* at 73-74; Compton Dep. at 40, 50, Oct. 10, 2007 (Compton & Sons' Mem. Ex. 12).) During this period, two events occurred that led Whaley to hire a second subcontractor. First, Whaley informed Compton for the first time that a wedding was to take place in a few weeks and that the new roof had to be in place by

then.  (Whaley Dep. at 60; Compton Dep. at 53.)  Second, Compton injured his ankle while stepping down from the roof of the garage.  (Whaley Dep. at 61-62, 69-70; Compton Dep. at 117-18.)  Concerned that the job would not be completed on time, Whaley hired Rudy Villataro and his employees to remove and dispose of the existing roof on the main house of the van Agtmaels' residence.  (Whaley Dep. at 61-62, 69-72; Compton Dep. at 53-54.)

By the afternoon or evening of May 9, 2004, at the latest, Villataro and his employees had removed the majority of the shingles from the main roof.  (Whaley Dep. at 74-76, 98-99; Compton Dep. at 55-60.)  After becoming aware of the impending storm, Compton and Jordan spread and stapled four to six tarps across the main roof to protect the house.  (Whaley Dep. at 76, 99, 107; Compton Dep. at 61-66.)  During the night of May 9-10, 2004, the storm struck the house, blowing one tarp completely off and one tarp partly off the roof, and damaging the interior of and property inside the van Agtmael's residence.  (Whaley Dep. at 118-23; Compton Dep. at 72-76.)

## II.

A motion for summary judgment should be granted when the record establishes that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The substantive law of the cause of action determines which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*  In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in

the light most favorable to the nonmoving party. *Id.* at 255.

III.

Compton & Sons submits three arguments as to why Whaley's indemnity and contribution claims must be dismissed: (1) because Compton & Sons was not a licensed home improvement subcontractor, it cannot be held responsible "for any alleged deficiencies in the performance of duties that only [Whaley] was licensed by the State of Maryland to perform" (Compton & Sons' Mem. at 13-18); (2) under the terms of its contract with Whaley and a subsequent alleged novation, Compton & Sons was not responsible for tarping the roof (*id.* at 18-27); and (3) when Compton & Sons tarped the roof, it was acting as a "Good Samaritan" and thus "has no liability because it exercised reasonable care" (*id.* at 27-29).

In addition, Compton & Sons makes two claim-specific arguments. Compton & Sons asserts that Whaley has no right to contribution because Compton & Sons was not a joint tortfeasor and the Economic Loss Doctrine precludes liability (*id.* at 31-36), and that Whaley has no right to indemnification because there was no express contract and, even if Compton & Sons was a joint tortfeasor, Whaley's active negligence precludes liability (*id.* at 29-31). I will address these five arguments in turn.

A.

Compton & Sons contends that because only Whaley had a license to perform home improvements, he could delegate to Compton & Sons only "labor," but not "responsibility" for the home improvements to the van Agtmaels' residence. (*Id.* at 15.) Thus, Compton & Sons asserts, subcontracting with Compton & Sons to accept responsibility for deficiencies in

performing the home improvement would be "against public policy and illegal and shall not be enforced." (*Id.* at 16.)  In support of this argument, Compton & Sons cites the Maryland Code, which provides that contractors who wish to perform home improvements must be licensed, and Maryland case law holding that an unlicensed contractor will not be aided by the courts in an effort to enforce contracts for home improvement.  (*See id.* at 13-18 (citing Md. Code Ann., Bus. Reg. § 8-301; *Berenter, Inc. v. Berman*, 265 A.2d 759, 761 (Md. 1970) ("[I]f a statute requiring a license . . . is regulatory in nature for the protection of the public, . . . an unlicensed person will not be given the assistance of the courts in enforcing contracts within the provisions of the regulatory statute because such enforcement is against public policy.").)

Although Compton & Sons' citations to Maryland law are correct, its legal conclusions are not.  Maryland law does not preclude Whaley from subcontracting labor and services to Compton & Sons;[1] nor does it prevent a court from holding Compton & Sons liable for breach of contract or in tort if it does not perform its duties.  Further, even assuming that a homeowner, such as the van Agtmaels, had contracted with an unlicensed contractor, Maryland case law does not suggest that the homeowner would be prevented from enforcing a contract *against* an unlicensed contractor.  Rather, the public policy embodied in the Maryland Code and *Berenter* is to protect the public, not unlicensed contractors.  Adopting Compton & Sons' proposition to insulate unlicensed contractors from suit would fly in the face of this policy.

B.

---

[1] A "'[s]ubcontract' is defined as '[a] contract with a person who owes labor or services under another contract, to perform some or all of the services or labor due.'" *Para v. Richards Group of Wash. Ltd. P'ship*, 661 A.2d 737, 742 (Md. 1995).

Compton & Sons' next two arguments also fail because a genuine issue of material fact exists as to whether the terms of its contract with Whaley included tarping the roof, and, even assuming they did not and that Compton & Sons acted as a "Good Samaritan," as to whether it acted with reasonable care in tarping the roof.  Compton & Sons and Whaley provide contradictory evidence with respect to both issues.

As to the terms of the contract, Compton & Sons argues that it was "vague, uncertain, and indefinite" whether Compton & Sons was responsible for tarping the roof.  (Compton & Sons' Mem. at 22.)  Compton & Sons contends: "Other than the telephone conversation between Whaley and Christopher Jordan [shortly before the storm], there was never any discussion regarding the tarping of the roof." (*Id.* at 22 (citing Whaley Dep. at 106, 171-72; Compton Dep. at 62; Jordan Dep. at 91).)  Further, Compton submits that he had never tarped a roof before and would not have agreed to do so except under "exigent circumstances." (*Id.* at 22 (citing Compton Dep. at 67.)  In the alternative, Compton & Sons argues that a novation[2] occurred when Whaley hired Villataro to remove and dispose of the existing roof, leaving Compton & Sons with only the duty to put new shingles on the roof, not to cover the roof in the case of a storm. (*Id.* at 21, 26.)

By contrast, Whaley contends that Jordan conceded that tarp installation is an unpaid for part of the roofing work he and Compton had been subcontracted to perform.  (Whaley's Opp'n at 10 (citing Jordan Dep. at 138-39 ("Q: Do you know how much Compton & Sons was paid to

---

[2] "A novation is a new contractual relation and contains four essential requisites: (1) A previous valid obligation; (2) the agreement of all the parties to the new contract; (3) the validity of such new contract, and (4) the extinguishment of the old contract, by the substitution for it of the new one." *Leisner v. Finnerty*, 250 A.2d 641, 644 (Md. 1969).

put down the tarp? . . . A: Probably nothing. We don't usually get paid to put down tarp.")).) Whaley testified that Jordan purchased four tarps one or two days prior to the storm because Jordan was concerned about protecting the interior of the house from the forecasted storm. (Whaley Dep. at 99.) Further, Compton concedes that he and Jordan purchased the tarps, called Whaley to see if he recommended putting the tarps on the roof before the rain came, and agreed to tarp the roof. (Compton Dep. at 62-63.) Whaley did not direct Jordan how to install the tarps because "[Jordan's] a roofer, he knows how to overlap tarps, I assumed." (Whaley Dep. at 108.)

Viewing the evidence in the light most favorable to Whaley, I find that a genuine issue of material fact exists as to whether Compton & Sons had a contractual duty to tarp the roof.[3] Because it is unclear whether Compton & Sons had this duty, a genuine issue of material fact also necessarily exists as to whether Compton & Sons acted as "Good Samaritans" by voluntarily undertaking the duty to tarp the roof.[4]

C.

Compton & Sons asserts that Whaley has no right to contribution because Compton &

---

[3] Furthermore, the Fourth Circuit has made clear that it is not proper to determine the contractual obligations of the parties to an ambiguous contract on summary judgment. *See Cram v. Sun Ins. Co,*, 375 F.2d 670, 674 (4th Cir. 1967) ("[T]he intent of the parties to an ambiguous contract is a question of fact which cannot be properly resolved on motions for summary judgment.").

[4] Even assuming Compton and Jordan acted as "Good Samaritans," the Maryland Court of Appeals has held: "It is settled tort law that once a person gratuitously embarks upon a course of conduct intended to protect another person or class of persons whom he was under no preexisting legal duty to protect, he must conduct himself in a reasonable and prudent fashion; and his failure to do so will subject him to liability for damages if injury proximately results." *Krieger v. J.E. Greiner Co.*, 382 A.2d 1069, 1081 (Md. 1978) (Levine, J., concurring). As discussed *infra*, it cannot be determined as a matter of law that Compton & Sons secured the tarps to the roof in a reasonable manner.

Sons was not a joint tortfeasor and the Economic Loss Doctrine precludes liability.[5]  (Compton & Sons' Mem. at 31-36.)  To recover for contribution, a plaintiff tortfeasor must show (1) that the parties share a common tort liability to an injured person, and (2) that the plaintiff tortfeasor has paid, under legal compulsion, more than his fair share of the common obligation.  *Hartford Accident & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship*, 674 A.2d 106, 137 (Md. Ct. Spec. App. 1996).  With respect to the first prong, to establish a cause of negligence, Whaley must prove the existence of a duty owed by Compton & Sons to the van Agtmaels, a breach of that duty, a legally cognizable causal relationship between the breach of duty and the harm suffered, and damages.  *Cramer v. Hous. Opportunities Comm'n of Montgomery County*, 501 A.2d 35, 39 (Md. 1985).  Compton & Sons contends that even if it had a duty to tarp the van Agtmaels' residence, "there is no evidence" that it breached that duty or, in the alternative, that its breach was the proximate cause of the damages.[6]  (Compton & Sons' Mem. at 32.)

---

[5] Compton & Sons' argument that the Economic Loss Doctrine precludes liability is unavailing.  The Maryland Court of Appeals has explained the Economic Loss Doctrine as follows: "It is generally said that a contractor's liability for economic loss is fixed by the terms of his contract. . . . Tort liability is in general limited to situations where the conduct of the builder causes an accident out of which physical harm occurs to some person or tangible thing other than the building itself that is under construction."  *Whiting-Turner Contracting Co.*, 517 A.2d at 344.  Because the physical damage in the instant case was to "tangible things" other than the roof under construction - specifically the van Agtmaels' property inside the house - the Economic Loss Doctrine does not preclude tort liability.

[6] It is clear that once Compton & Sons undertook the responsibility of tarping the roof, it owed a "tort duty" to perform its work with reasonable care.  *See Klein v. Dougherty*, 87 A.2d 821, 825 (1952) ("At least reasonable care and precautions" are owed by a subcontractor performing work.).  The Maryland Court of Appeals has held that "[i]n determining whether a tort duty should be recognized in a particular context, two major considerations are: the nature of the harm likely to result from a failure to exercise due care, and the relationship that exists between the parties."  *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986).  Here, both the nature of harm (the damage to the van Agtmaels' property) and the relationship (between a subcontractor and the house owner for whom he performs work) are sufficient to create a tort duty.  This tort duty exists notwithstanding the lack of contractual privity between Compton & Sons and the van Agtmaels.  *See Council of Co-Owners Atlantis Condo., Inc. v. Whiting-Turner Contracting Co.*, 517 A.2d 336, 341 (Md. 1986) ("The requirement of privity of contract has been abandoned as a basis for recovery by third parties for physical harm to themselves and tangible things against those who negligently supply, repair, or construct things so as to leave them in an unreasonably dangerous condition.")

Contrary to Compton & Sons' contention, I conclude that there is a genuine issue of material fact as to whether it breached its duty, and, assuming breach, whether that breach was the proximate cause of the damage to the van Agtmaels' property.  The parties dispute whether Compton & Sons breached its duty to tarp the roof with reasonable care.  Compton & Sons submits evidence that Compton and Jordan spread, overlapped, and stapled the tarps to the roof with reasonable care, despite the strong winds from the upcoming storm and the rubble and nail heads that Villataro had left behind.  (Compton & Sons' Mem. at 10-11; Compton Dep. at 63-68, 80; Jordan Dep. at 90-96.)  Whaley, on the other hand, contends that Compton and Jordan were negligent in securing the tarps, and in particular raises the question of whether they should have fastened wood strippings around the perimeter of the tarps to provide greater protection. (Whaley's Opp'n at 15-18; Whaley Dep. at 112-19; Compton Dep. at 65-66.)

As to proximate cause, Compton & Sons argues that Villataro's "failure to meet the standard of care of a reasonabl[e] . . . roofing contractor" (by stripping the entire main house roof before adding any new shingles, rather than incrementally carrying out the removal/replacement process) and Whaley's failure to properly supervise Villataro were the proximate causes of the damage.  (Compton & Sons' Mem. at 27.)  Whaley contends, however, that Compton's and Jordan's placement of the tarps proximately caused the damage.  (Whaley's Opp'n at 19.) Because there are genuine factual disputes as to both breach and proximate cause, I conclude that summary judgment is inappropriate.

D.

Finally, Compton & Sons argues that Whaley has no right to indemnification because there was no express contract and, even if Compton & Sons was a joint tortfeasor, Whaley's

-9-

active negligence precludes liability.[7] (Compton & Sons' Mem. at 29-31; Compton & Sons' Reply at 15-17.) A right to indemnity may arise in tort "where the character of one tortfeasor's conduct is significantly different from that of another who is also liable for the same damages." *Kelly v. Fullwood Foods, Inc.*, 111 F. Supp. 2d 712, 714 (D. Md. 2000) (quoting *Pyramid Condo. Ass'n v. Morgan*, 606 F. Supp. 562, 595 (D. Md. 1985)). Maryland follows the "active/passive negligence" rule, by which a defendant whose negligence was "passive" may seek indemnity from a tortfeasor whose negligence was "active." *Id.* (citing *Franklin v. Morrison*, 711 A.2d 177, 185-86 (Md. 1998)). However, "[i]t is well established under Maryland law that one who is guilty of active negligence cannot obtain tort indemnification." *Franklin*, 711 A.2d at 187.

Compton & Sons contends first that Whaley's indemnification claim must be dismissed because Pacific Indemnity's complaint against Whaley alleges active negligence. (Compton & Sons' Mem. at 30.) Compton & Sons is correct that if the conduct attributed to the party seeking indemnification in the original plaintiff's complaint constitutes active negligence, or if it is clear from the complaint that this party's liability would only arise from proof of active negligence, then there is no valid claim for indemnity. *Kelly*, 111 F. Supp. 2d at 714. However, Pacific Indemnity's complaint does not specifically allege that Whaley was actively negligent. Rather, it alleges that the damage to the van Agtmael's property "was caused by the negligence . . . of defendant Whaley . . . and/or [his] subcontractors . . . ." (Compl. ¶ 18.)

---

[7] Because no express contract exists in the instant case, Whaley must rely on tort law in seeking indemnification from Compton. (*See* Third-Party Compl. ¶¶ 9-12.) "The general rule is that contracts will not be construed to indemnify a person against his own negligence unless an intention so to do is expressed in those very words or in other unequivocal terms." *Crockett v. Crothers*, 285 A.2d 612, 615 (Md. 1972).

Compton and Sons' next contention that Whaley's failure to supervise, inspect, or help with the tarping of the roof necessarily constituted active negligence is also fallacious. (Compton & Sons' Reply at 17-18.) As discussed above, there is a genuine issue of material fact as to whether Whaley and/or Compton & Sons were negligent, and, if so, as to whether their negligence was active or passive. Accordingly, Whaley's indemnification claim must survive summary judgment.

For the foregoing reasons, I deny Compton & Sons' motion for summary judgment. A separate order to that effect is being entered herewith.

Date:   June 16, 2008                    /s/
                                         J. Frederick Motz
                                         United States District Judge